UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————— x
:
:
UNITED STATES OF AMERICA                :        07 Cr. 736 (S-1) (CPS)
:
:
:
v.                              :        **REPLY MEMORANDUM**
:        **OF LAW IN SUPPORT OF**
:        **DISCOVERY AND TEMPORARY**
RICARDO FANCHINI                        :        **RELEASE MOTIONS**
:
Defendant.              :
:
:
————————————————————— x

        Defendant Ricardo Fanchini submits this memorandum of law in reply to the

government's opposition brief.  Specifically, Mr. Fanchini responds to the government's

opposition to his requests for:  (1) expedited discovery, including a discovery cut-off date

and requirement that all relevant discovery be translated into English; and (2) the

temporary release of Mr. Fanchini to meet with counsel at their offices to review

discovery and assist in the preparation of his defense.  Lastly, as a result of the recent

superseding indictment, 07-736 (S-2) (CPS), adding defendants from the previously

separately indicted case of United States v. Dozortsez, et al., 08 Cr. 44 (CPS), the

government's motion to consolidate these cases now appears moot.  Mr. Fanchini,

however, reserves his right to make any severance motions under Rule 14 of the Federal

*The determination whether the government's motion is moot will be made by the Court, not counsel. Any opposition to the government's motion shall be served and filed on or before the close of business 6/27/08. So Ordered.*

*6/25/08      s/Hon. Charles P. Sifton USDJ*

Rules of Criminal Procedure at the time that other substantive pretrial motions are due on
or before September 15, 2008.[1]

## ARGUMENT

### I.

### THE GOVERNMENT'S DISCOVERY DILEMMA IS OF ITS OWN MAKING

In its opposition to Mr. Fanchini's motion for a discovery deadline and for
English translations of foreign language discovery material, the government complains
that the defendant's demands "are both unreasonable and physically impossible." (Gov.
Opp. Memo., June 18, 2008, at 1) (hereinafter "Gov. Opp."). However, the government
has only itself to blame for its inability to provide discovery in a timely manner.

The government recites the procedural history of the current charges against Mr.
Fanchini in its opposition memorandum of law. (Id. at 2.) The initial Indictment against
Mr. Fanchini was returned on September 28, 2007; on October 3, 2007, he was arrested
in London, England on the United States' request for extradition; on January 11, 2008,
the current Superseding Indictment was returned against him in this district; Mr. Fanchini
arrived in New York on February 1, 2008, and made his first appearance in this Court on
February 11, 2008. (Id. at 2-3.) In short, almost *nine months* have already elapsed since
the government first indicted Mr. Fanchini in this district. Four and one half months have
passed since Mr. Fanchini was extradited to New York and he has spent this entire time
incarcerated at the Metropolitan Detention Center ("MDC"). Incredibly, the government

---

[1]      Rule 12(b)(3)(D) expressly states that Rule 14 motions to sever charges or defendants are
among the Rule 12 motions that should be made at the time scheduled by the Court for pretrial
motions.

still claims in its response to Mr. Fanchini's motion for expedited discovery that: "it is impossible for the government to control exactly when evidence [on this Indictment] will be turned over to the U.S. by foreign governments." (<u>Id.</u> at 6.) Of course, this begs the question of why and how the government indicted Mr. Fanchini without possessing the evidence it now claims will be needed to try him on the pending charges.

Mr. Fanchini's motion for expedited discovery was prompted at the last status conference on May 28, 2008, at which Mr. Fanchini and the Court expressed a shared goal of preserving the originally scheduled trial date of January 12, 2009. Notably, the government agreed to this date at the initial scheduling conference on February 11, 2008. Moreover, the trial date was generously scheduled eleven months from the date of that initial appearance. Given the fact that the government also sought and obtained the pre-trial detention of Mr. Fanchini, it is unconscionable that it now tells the Court and Mr. Fanchini that it is "both unreasonable and physically impossible," (<u>id.</u> at 1), to complete discovery in six months time from the date of Mr. Fanchini's initial appearance and ten months from the date of the originally returned Indictment. Incredibly, the government does not even suggest in its opposition to Mr. Fanchini's discovery motion when it may finish the task of collecting the evidence for this trial from foreign governments. While the government claims that there is no need for a discovery cut-off date approximately five months prior to the trial date, given the current state of discovery production, Mr. Fanchini has grave concerns that absent such a deadline, the government will dump tens of thousands of pages of foreign language material and audio recordings on him just prior to the pre-trial motions return date, thereby effectively making it impossible for him to go to trial in January 2009.

3

As an example of the current state of discovery, the government has turned over hundreds of foreign audio files, unlabeled, not indexed, and in several different foreign languages. It would take Mr. Fanchini literally hundreds of hours to sort and organize this material, and this estimate does not even contemplate the time needed to prepare translations. If the government is allowed to continue in this way, there is little hope that Mr. Fanchini can adequately prepare for trial to commence on January 12, 2009.

The government complains that Mr. Fanchini has failed to "cit[e] a single case in which such an unprecedented and legally unsupportable measure . . . [of] an absolute cut-off deadline for all government discovery" can be ordered by the Court. (Gov. Opp. at 9.) Mr. Fanchini responds with a recent ruling by an *en banc* Ninth Circuit, which states broadly the proposition that district courts have supervisory authority to manage discovery:

> We begin with the proposition that the district court is charged with effectuating the speedy and orderly administration of justice. There is universal acceptance in the federal courts that, in carrying out this mandate, a district court has the authority to enter pretrial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly.

United States v. Grace, 526 F.3d 499, 508-09 (9th Cir. 2008) (*en banc*). In Grace, the Ninth Circuit sitting *en banc*, reversed an earlier panel decision and held that the district court had authority, in a complex environmental crime prosecution, to issue a pretrial order requiring the government to disclose – one year before trial – a finalized list of witnesses it intended to call in its case-in-chief. Id. The *en banc* court further held that

the district court also had authority to enforce its order by excluding witnesses whom the government failed to identify pursuant to the court's order. Id.

The Second Circuit also has long held that the district court has broad discretion and authority to manage discovery, and a district court's rulings regarding discovery and related procedural matters are reviewed only for abuse of discretion. Wood v. FBI, 432 F.3d 78, 82 (2d Cir. 2005). The Second Circuit has further held that "the district court has broad discretion to determine what remedial action, if any, is appropriate" in response to a party's failure to comply with discovery orders. United States v. Miller, 116 F.3d 641, 681 (2d Cir. 1997).

This Court's authority to manage discovery is generally provided under Federal Rules of Criminal Procedure 2 and 16, and its more general inherent authority to manage its docket. See Grace, 526 F.3d at 509 (collecting cases from other circuit courts addressing district court's inherent authority to manage discovery, including requiring the government to disclose witness lists in advance of trial); see also United States v. Jackson, 508 F.2d 1001, 1007 (7th Cir. 1975) (invoking the court's "inherent power, exercisable under appropriate circumstances, to assure the proper and orderly administration of criminal justice").

Rule 16(d)(1) of the Federal Rules of Criminal Procedure permits the court, "for good cause, [to] deny, restrict, or defer discovery or inspection, or grant other appropriate relief," and Rule 16(d)(2) grants the court broad authority to enforce "this rule," including by any order "that is just under the circumstances." Mr. Fanchini has moved this Court to restrict the government from carrying on discovery indefinitely and to set a deadline so that he can prepare for trial in a meaningful and orderly manner.

5

Rule 2 of the Federal Rules of Criminal Procedure bolsters a district court's authority under Rule 16 by instructing that the rules "are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." The thrust of Rule 16 – viewed in light of Rule 2 – is to authorize the district court to manage its docket and enforce the spirit and letter of the discovery rules.

Although Rule 16 does not expressly authorize a district court to set a discovery deadline, it is not inconsistent with the rules for the court to set one to ensure that the parties are prepared at the time of trial to proceed efficiently and intelligibly. The Supreme Court has recognized that federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." United States v. Hasting, 461 U.S. 499, 505 (1983); see also United States v. Richter, 488 F.2d 170, 173-74 (9th Cir. 1973) ("It is recognized that wide latitude is reposed in the district court to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice. . . . It would be ill-advised to limit improvidently this inherent power for fear of misuse.").

In this case, the government should not be able to, on the one hand, say that it does not have a discovery obligation because it is not in possession of certain discovery material that it must obtain from foreign government files, but on the other hand concede that it intends to obtain these materials and use them at trial. The government does not stop there but goes further by saying that it does not know exactly how long it will take to collect, prepare and produce those materials it does not yet have in its possession but intends to use at trial. The government's circular reasoning is exactly the kind of

6

machinations that this Court has the authority to control and manage under Rules 16 and 2 of the Federal Rules of Criminal Procedure and pursuant to its inherent authority to manage its docket.

The Court posed the still unanswered question to the government at the May 28, 2008 conference date: "When are people going to know what they're going to be doing next fall?" (T., dated May 28, 2008, at 3:11-13.) Indeed, Mr. Fanchini's motion for expedited discovery was filed in response to the Court's own directive:

> Make whatever motions are necessary. The motions return date [September 15, 2008] is something which states the date on or before which the motions have to be made. If you need to make motions in order to expedite the discovery which you're entitled to, then don't wait until mid-September, as you're now proposing, to make the motion. Make it as soon as you're in jeopardy of not being ready to try the case in January.

(Id., at 5:5-12.)

If the government cannot commit to completing discovery by a date sufficiently in advance of the return date for pretrial motions, Mr. Fanchini cannot adequately review the material, determine what issues need to be addressed in substantive motions, and draft the motion papers for motions to be heard on September 15, 2008. If the government continues to produce discovery at a time *after* motions are due to be filed, this will jeopardize the trial date because additional pretrial motions may need to be filed and Mr. Fanchini also will need sufficient time in advance of trial to review the discovery and conduct any investigation in response to the new material. Mr. Fanchini's request, therefore, for a discovery deadline is to ensure that the case proceeds efficiently and meaningfully to trial by the scheduled date.

Finally, the government also objects to producing English language translations of foreign language material prior to the proposed discovery deadline of August 1, 2008. (See Gov. Opp. at 13.)[2] Under similar circumstances, the Ninth Circuit found that the government had an obligation to provide English translations of relevant foreign language discovery material or to provide other meaningful access to the defendant prior to trial. See United States v. Zavala, 839 F.2d 523, 527-28 (9th Cir. 1988). In Zavala, the appellant was convicted after a bench trial of multiple counts of violations of the federal drug laws. Pursuant to a court-ordered wiretap, approximately 11,000 telephone conversations had been intercepted, most of which were in the Spanish language. Of these 11,000 calls, the government concluded that approximately 1,800 conversations were relevant to the drug-related charges. In Zavala, the government provided defense counsel with the tapes for the entire 11,000 calls, and also provided defense counsel with English transcriptions of the 1,800 relevant calls.

On appeal, Zavala argued, among other things, that his convictions should be overturned because the district court failed to order the government to provide English transcriptions for *all* of the tapes, including those not identified by the government as relevant to the drug charges. In rejecting defendant's arguments, the Ninth Circuit found that the government satisfied its discovery and due process requirements by translating into English those conversations it identified as relevant and providing other means to access the remainder of the conversations. Specifically, the district court offered to

---

[2]    Despite the government's formal objection to Mr. Fanchini's demands, it appears to have agreed to produce the requested translations: "Nevertheless, although not legally required to do so, the government has expressly represented to defense counsel that it intends to provide English translations of all Rule 16 materials (at the government's considerable expense). Indeed, the government has produced an appreciable volume of translated material to date, and will continue to produce such translations as they become available to the government." Gov. Opp. at 13.

provide the defendant with a Spanish translator or interpreter who could sit down with defense counsel and identify the subject matter of those tapes not translated. Id. at 528. If defense counsel needed any of these other tapes translated, based on the information provided by the Court's interpreter, the district court offered to have these tapes neutrally transcribed and translated. Id. These procedures were found to be necessary to protect defendant's Fifth Amendment due process rights. Id.

The government cannot simply dump thousands of recorded conversations in several different foreign languages and claim that it has satisfied its discovery and due process obligations. As in Zavala, the government should be required to produce English transcripts of those conversations relevant to the charges in this case and provide whatever other means necessary to meaningfully allow defense counsel access to those other foreign language materials that the government fails to translate. Absent these significant measures, Mr. Fanchini is being denied due process under the law.

## II.

### THE GOVERNMENT HAS FAILED TO PROVIDE A REASONABLE CUSTODIAL ALTERNATIVE TO ALLOW DEFENSE COUNSEL TO MEANINGFULLY CONSULT WITH MR. FANCHINI SO THAT HE MAY ASSIST COUNSEL IN HIS OWN DEFENSE

While the government vehemently objects to the Court's use of its authority under 18 U.S.C. § 3142(i) to order Mr. Fanchini's temporary release to defense counsel's offices to conduct discovery review and assist counsel in the preparation of his defense at trial, it has offered no assistance and provided no meaningful alternative to ensure that Mr. Fanchini's constitutional rights to due process and effective representation by counsel are protected.

9

The government suggests that Mr. Fanchini's current difficulties at the MDC can "easily be remedied," (Gov. Opp. at 20), with "an order from the Court" (id. at 21). However, it is not clear that the Court has authority to command the MDC to alter its procedures if the Court's requirements would be inconsistent with the facility's concerns for security and efficient maintenance of the jail. See generally Bell v. Wolfish, 441 U.S. 520, 540 n. 23 (1979) (warning courts that a jail's conditions of confinement "are peculiarly within the province and professional expertise of corrections officers" and "courts should ordinarily defer to their expert judgment in such matters"). Accordingly, the government's suggested "easy remedy" is not that, and furthermore, despite repeated efforts by defense counsel to change Mr. Fanchini's confinement conditions to allow him to review discovery and consult with defense counsel, his confinement conditions have not changed.

The government also misconstrues Mr. Fanchini's motion under 18 U.S.C. § 3142(i) as a bail motion. It is not that. In fact, as indicated in Mr. Fanchini's original motion papers, the authority of the Court to order his temporary release in the custody of "another appropriate person" is provided under the subsection entitled: "Contents of Detention Order." See 18 U.S.C. § 3142(i). Clearly, then, this Court does not have to make any findings under 18 U.S.C. § 3142(g) that Mr. Fanchini is an acceptable bail risk to have him transported under armed guard and kept in their custody at defense counsel's offices while he reviews discovery together with his attorneys.

Likewise, the government is wrong when it claims that Mr. Fanchini cannot be released into the temporary custody of armed guards to be transported between the MDC and defense counsel's offices because an immigration detainer has been lodged against

him. (See Gov. Opp. at 22.)  Under operation of Section 3142(i), Mr. Fanchini would continue to remain in the custody of the Bureau of Prisons.  He would never be released from their custody, just as when inmates are transported to and from court or the U.S. Attorney's Office, they are not in release status.  If the government somehow believes this status changes solely by function that the persons transporting Mr. Fanchini are private security guards as opposed to United States Marshals, Mr. Fanchini would consent to his transport by the Marshals and agree to compensate that agency for the costs of his transportation.

Finally, as an alternative to being transported to defense counsel's offices and in response to the government's expressed objections, Mr. Fanchini respectfully suggests that a secured room might be made available to him at the United States Courthouse for him to review discovery and meet with defense counsel.  In this way, the United States Marshals could transport him as they do any other inmate, thereby relieving the government of its remaining concerns.

In any event, as specified in Mr. Fanchini's affirmation to the Court in his initial motion papers, his current conditions of confinement at the MDC are woefully inadequate to ensure that his constitutional rights to due process and ability to assist in his own defense are protected.  The proposal for Mr. Fanchini's temporary release to review discovery and prepare for trial has been authorized by Congress in the Bail Reform Act and, in this case, under present conditions, is constitutionally necessary.

## CONCLUSION

For all of the reasons stated in Mr. Fanchini's opening Memorandum of Law in Support of his Motions for Expedited Discovery and Temporary Release and for the additional reasons stated herein, defendant Ricardo Fanchini respectfully requests that the Court grant his motions in their entirety and grant any additional relief this Court finds just and proper.

DATED:      New York, New York
            June 25, 2008

                        Respectfully submitted,

                        LAW OFFICES OF GERALD L. SHARGEL

By_____
            Gerald L. Shargel, Esq.
            Henry E. Mazurek, Esq.
            Evan L. Lipton, Esq.
            570 Lexington Avenue, 45th Floor
            New York, New York 10022
            Tel. (212) 446-2323
            *Attorneys for Defendant Ricardo Fanchini*

12