1

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK
 2

 3     - - - - - - - - - - - -    X

 4   UNITED STATES OF AMERICA,    :    CR 07-736(S-2)
                                       CR 08-044
 5                                :

 6
          -against-              :
 7                                     United States Courthouse
                                       Brooklyn, New York
 8   RICARDO FANCHINI, et al.,    :

 9                                     July 9, 2008
            Defendants.           :    12:00 o'clock noon
10
     - - - - - - - - - - - -    X
11
                      TRANSCRIPT OF MOTIONS
12       BEFORE THE HONORABLE CHARLES P. SIFTON
                UNITED STATES SENIOR JUDGE
13
     APPEARANCES:
14
     For the Government:          BENTON J. CAMPBELL
15                                United States Attorney
                                  BY: STEVEN TISCIONE
16                                    TONI MELE
                                      LICHA NYIENDO
17                                Assistant United States Attorneys
                                  271 Cadman Plaza East
18                                Brooklyn, New York

19
     For the Defendants:          GERALD SHARGEL, ESQ.
20                                HENRY E. MAZUREK, ESQ.
                                  EVAN LIPTON, ESQ.
21                                Attorneys for R. Fanchini

22
                                  BARRY S. ZONE, ESQ.
23                                Attorney for N. Dozortsev

24
                                  EDWARD V. SAPONE, ESQ.
25                                Attorney for A. Dozortsev
```

```
 1  Court Reporter:              Gene Rudolph
                                 225 Cadman Plaza East
 2                               Brooklyn, New York
                                 (718) 613-2538
 3

 4  Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.
 5

 6

 7

 8                        * * * * * *

 9

10

11          THE CLERK:  Criminal cause for motion, the United

12  States versus Fanchini, et al.

13          MR. SHARGEL:  Good afternoon, Your Honor.

14          THE COURT:  Good afternoon.

15          Why don't you have a seat?  We have been making that

16  a practice.

17          MR. SHARGEL:  Sure.  I can't break that habit, but I

18  will.  I will.

19          THE COURT:  All right.  Come on in and have a seat.

20          All right.  United States against Fanchini.

21          Who is appearing for the government?

22          MR. TISCIONE:  Steven Tiscione, Toni Mele, Licha

23  Nyiendo for the government.

24          Good morning, Your Honor.

25          THE COURT:  Just for purposes of the record, we've
```

1    got two cases, two separate cases on the calendar, 07-736 and,

2    in addition, 08 criminal 44.

3              Who is here for Mr. Fanchini?

4              MR. SHARGEL:  Gerald Shargel, Henry Mazurek and Evan

5    Lipton.

6              THE COURT:  All right.  And for Nikolai Dozortsev?

7              MR. ZONE:  Barry Zone for Nikolai Dozortsev.

8              Good afternoon, Your Honor.

9              THE COURT:  Good afternoon.

10              And for Arthur Dozortsev?

11              MR. SAPONE:  Edward Sapone.

12              Mr. Dozortsev is present in court.

13              How are you, Your Honor?

14              THE COURT:  Okay.  We've got two motions here, or

15    two sets of motions, motions for severance by the defendants

16    in the more -- well, it is 736, right, the second superseding?

17              MR. TISCIONE:  That is correct, Your Honor.

18              THE COURT:  And a motion by the government for

19    consolidation of that case and 08 criminal 44.

20              Let's start and hear from the defendants.  I will

21    give the government an opportunity to respond and then make

22    any arguments that it wishes to make in favor of its motion

23    and get things worked out.

24              All right.  Among the defendants, have you made any

25    arrangements as to who is going to go first?

1          MR. MAZUREK:  Judge, Henry Mazurek on behalf of

2     Mr. Fanchini.

3          THE COURT:  Okay.  We've started the practice

4     recently in the courthouse of having everybody speak from

5     their counsel table, since that is a little easier for the

6     marshals to deal with.  Have a seat.

7          Go ahead.

8          MR. MAZUREK:  Yes.  Thank you, Judge.

9          Henry Mazurek on behalf of Mr. Fanchini.  I will be

10    arguing the Rule 8(b) severance motion on behalf of

11    Mr. Fanchini on the second superseding indictment in the

12    07 CR 736 case.

13          Your Honor, the issue before the Court is actually a

14    fairly simple one, a direct one; that is, that in the second

15    superseding indictment, the government added three counts to

16    the indictment, counts nine through eleven, charging the

17    codefendants Nikolai and Arthur Dozortsev in a health care

18    fraud.  Actually, two separate health care frauds; one against

19    each of the codefendants; and then a felon in possession of a

20    firearm charge in Count Eleven against codefendant Nikolai

21    Dozortsev.

22          The issue before the Court under Rule 8(b) under

23    which Mr. Fanchini moves is whether these additional counts

24    against these defendants are properly joined under the rule

25    which requires that the offenses, or the defendants that are

5

1   joined are joined in the same act or transaction, or in the

2   same series of acts or transactions, that constitute an

3   offense or offenses.

4           In this case, Your Honor, there is no connection on

5   the face of the indictment between these Medicaid frauds in

6   counts nine and ten and the felon in possession of a firearm

7   charge.

8           What the government appears to argue, and somewhat

9   of a moving target, the government submitted papers last

10  evening in which they changed their argument from their

11  original opposition papers and seemed to be arguing at this

12  time that the health care frauds in counts nine and ten should

13  be joined -- are properly joined in this indictment because

14  the Count Eight in which Mr. Fanchini is charged jointly with

15  the Dozortsev defendants charges that the specified unlawful

16  activity, the health care fraud referenced in counts nine and

17  ten.

18          I would argue, Your Honor, as argued in the papers,

19  that this is not enough.  This is still too tenuous a

20  connection the allow the government to join these defendants

21  on a completely unrelated scheme from the narcotics offenses

22  that are charged as the primary focus of the indictment.

23          What the government would have you -- would have

24  this Court believe is that simply because they allege it in

25  Count Eight, that that's sufficient with respect to joining

1  the counts nine and ten.

2          I refer the Court again to the Biaggi decision in

3  the Second Circuit in which the Second Circuit analyzed a tax

4  versus non-tax offense, arguing or in -- setting forth a

5  principle that if the tax count does not have, or has only a

6  small amount of the unreported income that's charged in the

7  tax count, relating back to the non-tax count proceeds of

8  fraud that was charged in that case, then that still is not

9  enough of a connection to include both of those counts within

10  the same indictment.

11          That principle that was first put forth in Biaggi

12  was again reinforced in a footnote in the more recent Second

13  Circuit decision in Shellef.

14          In this case, Your Honor, it is -- there is no

15  similar pattern of the offenses that the Second Circuit has

16  held is a linchpin of determining whether the joinder of

17  defendants is proper as in some of the other Second Circuit

18  cases that we have cited and now the government has cited in

19  the most recent submission.

20          You have, as best we can tell from the allegations

21  in the indictment, a Medicaid fraud that is not even a

22  conspiracy between the two Dozortsev defendants.  They are

23  separately charged in two independent counts, in counts nine

24  and ten, and from the government's papers it is

25  initially -- initially they describe those offenses as the

7

1   Dozortsev defendants submitting Medicaid

2   applications -- affidavits with -- showing that they were

3   eligible for the benefits but were not because the government

4   claims that they had -- they had additional assets and income

5   that they were not reporting in these affidavits.

6         It is hard to see how this is a common plan or

7   scheme with the international narcotics transactions that are

8   charged throughout this indictment.

9         Also, with respect to the health care counts, there

10  is no identity of participants.  It seems, again, from how

11  those counts are charged, that these are independent for

12  personal submissions by the two Dozortsev defendants

13  independently.  Again, does not show the kind of connection in

14  the same series of transactions or acts that Rule 8(b)

15  requires.

16        Those are the arguments with respect to the two

17  health care frauds.

18        But I would submit, Your Honor, that the government

19  did not respond in their papers last evening to the -- the

20  issue with respect to Count Eleven, which is the felon in

21  possession of a firearm charge against Nikolai Dozortsev.

22  Again, this count is not connected on the face of this

23  indictment in any way with any of the other transactions or

24  acts that are charged in the indictment.  There is no

25  allegation that the firearms found during a search of

GR      OCR      CM      CRR      CSR

1   Mr. Dozortsev's apartment, which appears to have happened at

2   the time that they were executing his arrest, have anything to

3   do or were used in connection with or in furtherance of the

4   narcotics conspiracies charged back in the 19 -- largely in

5   the 1990s in the earlier parts of the indictment.

6          So with respect to that last count, Your Honor, the

7   government doesn't even attempt, it appears, to show how the

8   felon in possession of a firearm count, added as almost an

9   afterthought, based on evidence found at the time of

10  Mr. Dozortsev's arrest, would be connected in the same series

11  of transactions or acts that are charged in the international

12  narcotics trafficking scheme which makes up the primary part

13  of this indictment.

14         With that said, Your Honor, again, I think that as a

15  result of the government's failure to show the connections

16  between these latter counts and the Dozortsev defendants with

17  the other counts that are charged against Mr. Fanchini in the

18  indictment, that the Court under Rule 8(b), which is not, I

19  repeat again, is not a determination of whether the defendants

20  are prejudiced under the standard of Rule 14, that the

21  Rule 8(b) standard has not been met to permissibly join these

22  defendants based on the latter three counts that have been

23  added to the indictment.

24         THE COURT:  Okay.  Among the Dozortsev defendants,

25  is there anything you want to say or add?

1          MR. ZONE:  I will start with respect to counts nine

2     and eleven to the health care fraud and the felon in

3     possession counts that are clearly improperly joined.

4          With respect to the felon in possession count,

5     the -- the rifles recovered were hunting rifles and the count

6     is a felon -- the felony that the government relies on is a

7     twenty-year old tax conviction.  Clearly, there is no view

8     that these -- that this count belongs in this indictment at

9     all.  Any jury listening to a case like this where guns are

10    found in the home of the defendant will just view him as just

11    a pure criminal having guns.

12         With respect to the health care fraud, it was

13    initially my understanding, and my reading of the count in the

14    indictment, that he had improperly obtained Medicaid benefits,

15    and again, the appearance to any jury listening to the counts

16    in this indictment, the evidence that you would expect

17    relative to these counts, would just say well, you have drugs.

18    You have money laundering.  You have guns.  You have health

19    care fraud.  There just can be no fair view, no fair view by a

20    jury, or no fair trial of this case as to Mr. Dozortsev,

21    Nikolai Dozortsev, should these two counts remain in this

22    indictment.

23         It is clear, that they should be severed under

24    Rule 8(a).  They don't belong here.

25         Clearly, if there is some crazy argument that there

1   is some connection between the health care fraud and the guns,

2   then clearly the prejudice is astronomical.

3          With respect to the -- to their now being joined in

4   this second or third superseding indictment, the original

5   indictment included a year's worth of conduct that included

6   monetary transactions and attempted drug conspiracy and we

7   have received discovery relative to that one year of conduct.

8          Seventeen years of criminal activity was alleged in

9   the first indictment and now in the superseding indictment

10  apparently there are seventeen years worth of money laundering

11  and drug transactions, and I would say that all of that

12  evidence and all of that discovery information out of Europe

13  has nothing to do with Nikolai Dozortsev and the stretch that

14  the government has made is -- to just throw as much junk into

15  this basket and just see what sticks, I -- it is just

16  disjointed.  It doesn't make sense.

17         Clearly, they don't belong together as codefendants.

18  Specifically, the prejudicial effect on Nikolai Dozortsev of

19  seventeen years of this money laundering and drug evidence

20  that the government supposedly had would just destroy and burn

21  Mr. Dozortsev, Nikolai Dozortsev, who has been charged very

22  specifically with small pieces of the money laundering, drug

23  offenses.  Clearly, those counts should be severed and they

24  shouldn't be codefendants.

25         THE COURT:  Okay.  On behalf of Arthur Dozortsev?

1          MR. SAPONE:  Yes.

2          Good afternoon, Your Honor.  Edward Sapone for

3    Arthur Dozortsev.

4          I respectfully join, with the Court's permission, in

5    both Mr. Fanchini's and Nikolai Dozortsev's motions and do not

6    want to repeat much of what has been said, but I would like to

7    add that Arthur Dozortsev certainly is not -- doesn't belong

8    in this most recent indictment ending in 736 under Rule 8(b).

9    The reason plainly for that is that we don't have a common

10   scheme or plan existing between the approximately eight crimes

11   with which Mr. Fanchini is alleged to have committed, ranging

12   from  engaging in a continuing criminal enterprise conspiracy

13   to import cocaine, heroin and MDMA, conspiracy to distribute

14   three -- those same three narcotics, to import them, is five

15   kilograms of cocaine that's allegedly imported and the charges

16   go on and on.

17          Plainly, the government alleges that this enterprise

18   existed from 1990 through October of 2007, when in fact, in

19   the indictment just prior to the 736 indictment, Arthur

20   Dozortsev was only charged with conspiracy to launder money in

21   a seven-month period in 2007, from March to October.

22          In the most recent 736 indictment, all of a sudden

23   we have Arthur thrust into this tremendous indictment, where

24   crimes allegedly occurred back in 1990 when he was in Arizona

25   and he was only eighteen years of age, when there is no

1   evidence whatever that he even knew Mr. Fanchini, let alone

2   formed any illegal agreement to commit any crime against the

3   United States.

4          There is no common scheme or plan or purpose

5   involved in these eight narcotics related offenses and a money

6   laundering -- alleged money laundering conspiracy

7   seventeen years later.

8          So under 8(b), because there is no common scheme or

9   plan, there are separate conspiracies, quite frankly, meaning

10  the alleged Fanchini activity, the eight alleged crimes I just

11  spoke of, and the one money laundering conspiracy with which

12  Arthur Dozortsev is charged, those conspiracies are separate.

13         I think the Kotteakos case versus the United States,

14  US Supreme Court 1946, is instructive.  In Kotteakos,

15  admittedly there were about 35 defendants in eight separate

16  conspiracies, but the Court explained very clearly that where

17  you have separate conspiracies and the government wants to

18  charge them all into one grand conspiracy but the evidence is

19  different and really bears out separate and distinct

20  conspiracies, then it denies the defendant a fair trial and

21  due process.

22         Here, the government claims that they have four

23  months of evidence to bring before a jury for Mr. Fanchini and

24  Mr. Dozortsev, and what we have is Mr. Artie Dozortsev charged

25  with merely conspiracy to money -- launder money for a

1    fifty-seven month period seventeen years later.

2              What we would have here are two separate

3    conspiracies.  We would have conspiracy number one, which is

4    the alleged Fanchini-Nikolai Dozortsev conspiracy that lasted

5    for all those years and included all these alleged drug

6    offenses, and then a separate conspiracy within which Artie is

7    alleged to have laundered money at the tail end of it.

8              So under a Kotteakos rubric we have separate

9    conspiracies and, therefore, they shouldn't be joined

10   together.  Under 8(b) we don't have a common scheme or plan or

11   a link that exists between all these alleged drug offenses and

12   continuing criminal enterprise offenses and the ultimate

13   alleged money laundering.

14             For those reasons, Artie just doesn't belong in this

15   indictment.

16             THE COURT:  Artie?

17             MR. SAPONE:  Artie Dozortsev.  Sorry.  Arthur.

18             THE COURT:  Let's --

19             MR. SAPONE:  In any event, Your Honor, I -- if --

20             THE COURT:  Just as a matter of general practice, in

21   my courtroom, as litigants will tell you, we talk about people

22   by their full name or their last name.  Don't try for a level

23   of informality in a serious matter of this sort.

24             All right.  Anything further?

25             MR. SAPONE:  Yes, Your Honor.

1       Even if the Court finds that joinder is proper under

2   8(b), under Rule 14 there should be a severance of Arthur

3   Dozortsev from the indictment because the substantial

4   spillover prejudice that would result would deny him a fair

5   trial.  There would literally be three months and three weeks

6   of testimony not against him but against Mr. Fanchini and

7   Nikolai Dozortsev.  No limiting instruction, I most

8   respectfully suggest, could cure that.

9       Arthur Dozortsev is simply charged with having

10  engaged in an agreement to receive $1 million of money which

11  were the proceeds of unlawful activity.  That would be a

12  one-week trial.

13      The government will argue that they have to prove

14  the specified unlawful activity that Mr. Fanchini and Nikolai

15  Dozortsev engaged in for the seventeen years preceding March

16  to October of 2007 in order to prove that aspect of the

17  Artie -- Arthur Dozortsev money laundering, but it is simply

18  not so.  They have to show that Arthur Dozortsev had knowledge

19  that the two wire transfers that he allegedly received on

20  behalf of Mr. Fanchini was the product of some unlawful

21  activity.  That doesn't take four months to do.  So for three

22  months and three weeks I suggest the -- the evidence would be

23  not against him but against the other two defendants who I

24  named and the spillover of that would be impossible for him to

25  overcome.

1          Finally, Your Honor, under Rule 8(a), what we have

2     here in the 736 indictment is Arthur Dozortsev is only charged

3     with in Count Eight and Count Ten.  Eight is conspiracy to

4     commit money laundering, which I have spoken about, and ten is

5     a health care fraud claim.

6          Under Rule 8(a), those two charges are not properly

7     joined in one indictment.  The health care fraud claim has

8     absolutely nothing to do with the money laundering claim.  The

9     government I think has already identified where they believe

10    that million dollars came from that allegedly ended in Arthur

11    Dozortsev's account.  It had nothing to do with any health

12    care fraud claim.

13         To stick a health care fraud accusation in with

14    conspiracy to commit money laundering claim in one indictment

15    is just not proper joinder.

16         The prejudice then under Rule 14 would also result,

17    if Your Honor were to find joinder to be proper under Rule 8,

18    in that a jury would look at Arthur Dozortsev and figure well,

19    he's accused of health care fraud and conspiracy to commit

20    money laundering and there is prejudice in those two unrelated

21    crimes being joined in the same case.

22         So, for all those reasons, I respectfully join in my

23    cocounsel's motions and ask Your Honor to sever Arthur

24    Dozortsev from his codefendants under Rule 8(b) and to sever

25    the two distinct and separate counts, both Count Eight and

1 | Count Ten, in the 736 indictment.

2 | Thank you.

3 | MR. TISCIONE:  Thank you, Your Honor.

4 | I will respond first to the charges made by all

5 | three defendants, that counts nine through eleven of the

6 | indictment should be -- of the superseding indictment should

7 | be severed.  Those are the health care fraud and the firearm

8 | charges.

9 | With respect to the health care fraud charges, there

10 | is no basis for severance for several reasons.

11 | As the defendants concede in their own papers,

12 | Rule 8(b), the law under Rule 8(b) is very clear; that in

13 | deciding whether joinder is proper under Rule 8(b), the

14 | district court may look only to the allegations in the

15 | indictment and not to any factual claims made by the parties

16 | about the evidence that will or will not be presented at

17 | trial.

18 | As the defendants concede, the superseding

19 | indictment here specifically charges health care fraud as a

20 | specified unlawful activity underlying the money laundering

21 | conspiracy against all three defendants.

22 | Thus, the evidence of substantive health care fraud

23 | violations will be admissible against all three defendants

24 | regardless of whether there is a joint or separate trial and

25 | the allegations on the face of the indictment are sufficient

1    to permit joinder under Rule 8(b).

2          The defendants rely on several cases that are

3    completely inapposite.  They rely specifically on United

4    States versus Biaggi and United States versus Shellef.  Both

5    of those are inapposite for two reasons.

6          First, they both deal with joinder of tax evasion

7    counts to non-tax offenses, which as the Shellef court noted,

8    is governed by a more strict standard for joinder.  As the

9    Second Circuit explained in Shellef, joinder of tax charges

10   with non-tax charges under Rule 8 is permissible only if the

11   tax offenses arose directly from the other offenses charged,

12   such as when the funds derived from the acts underlying the

13   non-tax charges, either are or produce the unreported income

14   that is the basis for the tax charge.

15         In this case there are no tax charges.  What's

16   charged here are substantive health care fraud violations that

17   form the basis for part of the money laundering conspiracy

18   that's charged in Count Eight.

19         The second reason why both of those cases are

20   inapposite is in Biaggi the Court found the joinder was proper

21   with those counts and in Shellef the Court found that joinder

22   was proper for all counts in which the tax fraud -- the tax

23   evasion was based on proceeds from the unlawful activity.

24         The one count that the Court in Shellef found was

25   misjoined was because none of the proceeds from the unlawful

1   activities -- the substantive counts led to that tax evasion

2   count.  In fact, the tax evasion count was for a period of

3   time before the alleged conspiracy for the substantive crimes

4   even occurred.

5        There was absolutely no connection and simply it is

6   not this case.  In this case the indictment specifically

7   charges that health care fraud was one of the specified

8   unlawful activities of the money laundering conspiracy which

9   is against all three defendants.

10       With respect to the firearm charge, the Court -- the

11  government would agree, that it is a closer issue with respect

12  to joinder, and we would agree to sever that count with

13  respect to Mr. Nikolai Dozortsev into a separate trial.  We

14  would expect that trial would last a day, two at the most; and

15  the government is ready to proceed on that trial whenever it

16  is convenient for the Court.

17       With respect to the entire rest of the indictment, I

18  think the best arguments for why all of these defendants need

19  to be joined into one single trial is actually made by the

20  defense counsel in their motion asking the Court permission to

21  conduct joint defense meetings in this case when they are on

22  separate indictments.  Clearly, at that time all the

23  defendants contemplated that there was an overlap in

24  commonality between the charges, which is borne out by the

25  fact that the superseding indictment now charges all three

1  defendants in the same conspiracy charge.

2          In fact, I can't make the argument for consolidation

3  or joinder better than Mr. Shargel did in his own motion.  The

4  charges against all three defendants arise out of the same set

5  of facts and circumstances and the same common scheme or plan.

6  They are all charged in the same money laundering conspiracy.

7          Moreover, as explained in the government's papers,

8  the evidence overlaps for all of these defendants and will be

9  virtually the same regardless of whether they are tried

10  jointly or in separate trials.

11          As Mr. Shargel also pointed out in his motion

12  seeking joint defense meetings, there are considerable

13  benefits of judicial resources being conserved here.  A joint

14  trial would save the parties and the Court from two virtually

15  identical four-month trials, trials that would involve the

16  same witnesses and the same evidence.  And I would point out

17  that many of the witnesses in these trials would have to

18  travel internationally to come here and testify in the US.

19          Those are exactly the type of institutional

20  interests that the Supreme Court has recognized as creating a

21  presumption of joint rather than separate trials with

22  defendants who are properly joined in a single indictment.

23          The defendants Nikolai and Arthur Dozortsev also

24  seek severance because of the potential spillover prejudice.

25  Under Second Circuit law, the defendants have an extremely

20

1    difficult burden.  They must demonstrate that a

2    constitutionally fair trial would be impossible if they are

3    tried jointly.

4        The defendants have not come close to satisfying

5    this burden.  They have not identified even a single piece of

6    evidence that would be inadmissible against them in a separate

7    trial, much less the extraordinary prejudice required under

8    the law.

9        The very nature of the money laundering charge

10   virtually guarantees that the evidence will be the same

11   against all three defendants.  In order to prove that the

12   laundered funds were the proceeds of unlawful activity, the

13   government would present the same evidence of narcotics

14   trafficking, cigarette smuggling and health care fraud.  That

15   evidence will be presented against Ricardo Fanchini, Arthur

16   Dozortsev and Nikolai Dozortsev, either in a single trial or

17   in separate trials against each defendant.

18       It is not the case that the money laundering charges

19   against Arthur Dozortsev and Nikolai Dozortsev encompass only

20   a seven-month period or that they are just two wire transfers.

21   Rather, they encompass a conspiracy lasting more than a decade

22   involving tens of millions of dollars and numerous money

23   laundering transactions.

24       The $1 million Mr. Sapone was referring to was

25   simply the government's plea offer to his client and it has

1   nothing to do with the actual evidence that will be presented

2   at trial.

3         The government has evidence that Nikolai and Arthur

4   Dozortsev were involved in laundering illegal proceeds for the

5   Fanchini organization as far back as 1997, which covers nearly

6   the entire period of criminal conduct charged in the

7   indictment against Fanchini.

8         Nikolai Dozortsev is also charged in a number of

9   drug transactions, including several violations dating back to

10   1997 as well.

11         These are expanded charges.  They are charges that

12   are more expansive, greater than the charges that were in the

13   original indictment against both Dozortsevs and because they

14   are now charged in the superseding indictment with these

15   expanded charges, the original charges in that indictment

16   against them are irrelevant.

17         I don't know if Your Honor would like me to address

18   this now, but the defense counsel for Mr. Fanchini also raised

19   another issue with respect to the potential disqualification

20   of Robert Wolf, who is one of Nikolai Dozortsev's attorneys.

21   I would be happy to address the government's response to that

22   argument now, if Your Honor wishes.

23         THE COURT:  No.  You responded in the papers.  This

24   is an opportunity to respond to oral argument.  I didn't hear

25   any oral argument on that.  If you want to rest on the papers,

1    that's fine.

2            MR. TISCIONE:  Yes, Your Honor.  The government

3    would simply rest on its papers then.

4            THE COURT:  Okay.  Anything more you all want to say

5    by way of reply?

6            MR. MAZUREK:  Yes, Judge.

7            Henry Mazurek on behalf of Mr. Fanchini.

8            I just want to reply to the specific argument that

9    the government has made with respect to why the health care

10   fraud counts against the two Dozortsev defendants should

11   remain in the S-2 indictment.

12           The government would have this Court limit the

13   holdings in Shellef, or reasoning in Shellef, and in Biaggi to

14   only tax cases.  I think that that would be incorrect to do

15   because the wrong goes well beyond just the narrow facts of

16   those two cases.  Specifically, here the reasoning is

17   even -- is more relevant because we are talking about money

18   laundering versus substantive offenses, which are very

19   analogous to the kind of reasoning that was done in the

20   Shellef and Biaggi cases relating tax cases to -- tax counts

21   to substantive counts.

22           The reason for that is that in both the money

23   laundering and tax scenarios, you deal with proceeds that have

24   been received from unlawful activities, that -- and in Shellef

25   and in -- in Biaggi --

1          THE COURT:  Sometimes it's from legal activities
2    too.
3          MR. MAZUREK:  Absolutely, Your Honor.  I am just
4    dealing with the allegations at this stage that we have to
5    deal with in terms of the allegations in the indictment.
6          THE COURT:  No.  I think the point is, I suppose the
7    thinking is that almost any time you have a criminal activity
8    which produces income you can tack on in almost all cases a
9    tax count since it is unlikely it would have been reported.  I
10   hope it is not the situation that every time we have illegal
11   proceeds from a crime that it gets laundered.  Anyway, it
12   seems --
13         MR. MAZUREK:  These days it seems like the
14   government is using that tact.  Perhaps the recent Supreme
15   Court decision in Santos will preclude them from doing that as
16   often as they have been.
17         With respect to -- a specific argument the
18   government has made on the Biaggi and Shellef cases, they
19   argue that simply because they allege the health care fraud as
20   a specified unlawful activity in the money laundering
21   conspiracy count, then that's the end of the story with
22   respect to Rule 8 argument.
23         I would refer the Court again back to the
24   dicta -- to dicta in Biaggi that was reinforced in a footnote
25   in Shellef -- in footnote 13 in Shellef.  The issue in Biaggi

1  was that there was a tax count connected to extortion counts

2  in the indictment.  The Second Circuit ruled that the tax

3  count against one of the defendants was properly joined in the

4  indictment because the unlawful -- the unreported proceeds

5  came from the primary extortion that was charged in the

6  indictment.

7          However, in that case the Second Circuit went on to

8  say that, hold on.  There is a limiting principle to that.

9  And that is, if in fact the tax count that was added on had

10 primarily, or in the words of the Shellef case which cited to

11 Biaggi, if it weren't for the fact that the overwhelming

12 majority of the unreported income had not been -- had been

13 part of the tax count, then it is not so clear that those

14 counts were properly joined.

15         If the overwhelming majority of the proceeds in the

16 tax count had come from an unrelated extortion, the Second

17 Circuit in Biaggi said, those counts may not be properly

18 joined.  Of course, they were talking in the hypothetical

19 sense since it was the converse that that -- that were the

20 actual facts in that case.

21         Again, Shellef reinforced that hypothetical scenario

22 that was presented in -- first in Biaggi and again stated

23 that -- if I can quote from that case?  Again noting

24 hypothetically that if the trial had focused on the unrelated

25 extortion joinder of a tax count based largely on the

1   unreported Wedtech extortion, which was the primary extortion

2   in this case, joinder may be improper.

3         That is what we have in this case, Your Honor.  The

4   government in Count Eight, as prior counsel has -- my

5   cocounsel have indicated, have set forth this overarching

6   conspiracy expanding seventeen years.  They add two counts of

7   substantive health care fraud individually against the two

8   Dozortsev defendants spanning a time period of approximately

9   four years.  On -- taking the government's argument, that you

10  can't look beyond the allegations of the indictment, which I

11  suggest, while one case may have noted that in dicta, is not

12  the way that other cases have decided these issues, the -- the

13  small amounts of the proceeds from this alleged personal

14  health care fraud against the two Dozortsev defendants pale in

15  comparison to the seventeen years of millions of dollars of

16  alleged money laundering that was conducted through extensive

17  international narcotics trafficking.

18        To tie these two together based on that -- on that

19  very, very thin reed, I would suggest, is exactly the kind of

20  scenario that was foreseen by both the Biaggi court and

21  reinforced again by the Shellef court.

22        THE COURT:  Okay.  Yes, sir?  Go ahead.

23        MR. ZONE:  I would just say with respect to proceeds

24  of specified unlawful activity in the health care fraud, my

25  understanding of this count is that they received illegal

26

1   benefits, Medicaid benefits.  Those are the proceeds.

2            THE COURT:  That's what I understood.

3            MR. ZONE:   That's what I understood.

4            I don't know how those proceeds now become

5   translated into some money that you should put into a bank

6   account, just from a practical standpoint.

7            That's all I wanted to add.

8            MR. SAPONE:  If I may take that ball and run with

9   it, Your Honor, on behalf of Arthur Dozortsev.

10           Shellef is instructive, where it says that two

11  separate acts are only joinable under 8(a) if they are of a

12  similar character, based on the same act or transaction or

13  part of a common scheme or plan.

14           So with respect to indictment seven -- ending in 736

15  regarding Arthur Dozortsev, we have in Count Ten a health care

16  fraud accusation, in Count Eight a money -- a conspiracy to

17  commit money laundering.

18           Well, clearly that's not of a similar character.  It

19  is certainly not based on the same act or transaction, and

20  there can't be a common scheme or plan.

21           I respectfully suggest, unless, as Mr. Zone points

22  out, unless what Arthur Dozortsev did with respect to Count

23  Ten was receive some sort of money from an insurance company,

24  some Medicaid money, which he then tried to launder or engage

25  in an agreement or conspiracy to launder, which simply is not

1　the government's proof.

2　　　　The government will attempt to prove as to Count Ten

3　that all Arthur Dozortsev did was obtain services. He was

4　able to go to a doctor or a hospital. It was paid for by

5　Medicaid. So certainly then the third prong, common scheme or

6　plan is -- falls short too with respect to the government's

7　ability to prove that because unless there is money to

8　be -- an agreement to launder money that came from health care

9　fraud, then there can't be a common scheme or plan linking

10　one's receipt of benefits, i.e., going to a hospital or a

11　doctor, and laundering money. So under 8(a), they should not

12　be joined, counts eight and ten as they relate to Arthur

13　Dozortsev.

14　　　　THE COURT: How do you launder Medicaid benefits?

15　　　　MR. TISCIONE: Your Honor, as --

16　　　　THE COURT: According to your learning from the

17　investigation in this case?

18　　　　MR. TISCIONE: As the government attempted to

19　explain in its most recent submission, Your Honor, the health

20　care fraud charged in the indictment encompasses more than

21　simply the receipt of personal Medicaid benefits on behalf of

22　the Dozortsevs and their family members.

23　　　　The health care fraud charges also include a scheme

24　in which Nikolai and Arthur Dozortsev along with several

25　unindicted coconspirators defrauded Medicaid by submitting

GR　　OCR　　CM　　CRR　　CSR

1   false and/or inflated claims for benefits through medical

2   companies they were associated with.  Wiretap interceptions

3   and surveillance established --

4           THE COURT:  What you are talking about is not the

5   benefits.  You are talking about the profits made by these

6   companies?

7           MR. TISCIONE:  It is both, Your Honor.  I would --

8           THE COURT:  How are --

9           MR. TISCIONE:  I would agree that's --

10          THE COURT:  Benefits would --

11          MR. TISCIONE:  For the benefits, I would agree, that

12  the benefits would not be part of laundering.  However, the

13  health care fraud charges also encompass the cash payments

14  that Nikolai and Arthur Dozortsev -- that were their share of

15  the profits from this health care fraud that were then

16  laundered.

17          THE COURT:  All right.  You say that was laundered?

18          MR. TISCIONE:  That was laundered through the

19  same --

20          THE COURT:  Is there anything else you want to say

21  by way of response or not?

22          MR. TISCIONE:  No, Your Honor.

23          THE COURT:  All right.

24          MR. TISCIONE:  Actually, I do want to respond to one

25  thing raised by Mr. Mazurek.

1        He continues to rely on the Shellef case.  I would

2   simply point out the difference here is that, unlike in

3   Shellef, the indictment in this case specifically charges that

4   all three defendants laundered the proceeds of the substantive

5   health care fraud.

6        In Shellef, the Court was dealing with a situation

7   where the tax fraud happened before the substantive

8   allegations were even alleged to have occurred.  So there is

9   clearly no connection there between the tax evasion which

10  occurred before the substantive crimes were committed.

11       In this case, we have substantive crimes that were

12  committed during the same period as the money laundering

13  conspiracy and they are specifically alleged in the

14  indictment, that the money laundering conspiracy involved

15  laundering proceeds of those specified health care fraud

16  violations.

17       THE COURT:  Okay.  I must say, I don't find the

18  resolution of the motions as difficult as perhaps is going

19  through all your papers.

20       I am going to deny both motions; that is, I am going

21  to deny the motions for severance and deny the motion for

22  consolidation as moot.

23       On the severance motions, it appears to me that

24  there is a basis for concluding that the charges are properly

25  joined because of this alleged overarching common scheme or

1  continuing criminal enterprise, which had as part of its

2  essence money laundering, in which on the basis of the

3  allegations everybody joined.

4       I don't see a basis for Mr. Fanchini's application

5  for severance because of the possibility that at some point he

6  will wish to call Mr. Wolf.  First of all, because I have no

7  idea as to what sort of evidence it is intended to be

8  presented through Mr. Wolf, and, secondly, because it seems to

9  me that there are a substantial number of hurdles before we

10  get around to disqualifying him.

11       With respect to the Dozortsevs' motions, it is

12  obviously a different set of allegations made in the more

13  recent charges than were made originally, but the basis for

14  the expansion not only in time but in charges appears on the

15  face of it to be the joint activity, the conspiracy, the

16  continuing enterprise, of money laundering of a variety of

17  different criminal activities, including if the government

18  position is well taken, laundering of proceeds that were the

19  product of Medicaid fraud.

20       I am glad to hear that the government is itself

21  consenting to severance of the gun charge.  I will deal with

22  that charge when, as and if the parties wish to take it to

23  trial.

24       That brings me to the next matter, which is the

25  issue of preparing for trial on the new indictment.  I intend

1  to issue an amended pretrial order, which at this point will

2  delay the trial of the Dozortsevs' case, or the charges

3  against the Dozortsevs, to put it on schedule with the trial

4  of the charges against Mr. Fanchini, with a trial at least at

5  this point in mid-January and motions addressed to these new

6  charges returnable September 15th, I think it is.

7  January 12th for the trial and September 15th for the pretrial

8  motions.

9          I am going to enter an excludable order of delay

10  because the Dozortsevs are now joined with a defendant as to

11  whom the Speedy Trial Act period has not expired, a finding

12  that the interests of trial preparation for the complex trial

13  outweighs the interest of the defendants or the public in a

14  more speedy disposition of the matter.

15          On discovery, as I noted the last time

16  Mr. Fanchini's case was before me, the government is engaging

17  in and is committed to continue a rolling discovery, which

18  means that they will make discovery, Rule 16 discovery as it

19  comes in to the government's possession; and I note that they

20  have already done that with respect to discovery previously

21  furnished to Mr. Fanchini.

22          The defendants are -- the Dozortsev defendants are

23  not aware of it -- have been told and assume that there may be

24  a delay in the production of discovery coming from other

25  countries that is not yet in the possession or under the

1    control of the government.  I have been assured that that

2    process of getting that out of the hands of the foreign

3    governments will be completed by October 1st?

4              MR. TISCIONE:  That's our hope, Your Honor.  That's

5    what we are working towards.

6              THE COURT:  As a result of that, any additional

7    pretrial motions that are necessitated by the delay in

8    discovery until October will form a basis for a new date for

9    additional motions, if needed.

10             On the assumption, taking the same timeframe that we

11   have been talking about earlier, fix an additional return date

12   for motions of November 17th.

13             Now, it may be that either the motions or the

14   discovery will not be promptly forthcoming through nobody's

15   fault, that is, that having exercised due diligence in getting

16   the discovery from other countries, it is shown that a brief

17   additional adjournment will put people in a position to be

18   better prepared for trial and, if so, I suppose we'd better

19   start considering an alternative trial date if it has to be

20   delayed.  But that is something that, since it involves a

21   number of busy attorneys and a number of moving parts,

22   including the mechanics of dealing with foreign countries, I

23   think we had better start on the process early on of

24   determining when, as the play says, we shall next meet again,

25   if we don't get together here January 12th, which I at this

1    point fully expect we will be able to do.

2         Unless there is something further, I've got a

3    sentencing and --

4         MR. TISCIONE:  Actually, Your Honor, Nikolai

5    Dozortsev and Arthur Dozortsev need to be arraigned on the

6    superseding indictment.

7         THE COURT:  Yes.  I'm sorry.

8         If there is no objection to this procedure, since we

9    have been discussing what the new charges are, I will simply

10   enter pleas of not guilty on both of those --

11        MR. ZONE:   On behalf of Nikolai Dozortsev, thank

12   you, Your Honor.

13        MR. SAPONE:  I wish you a good afternoon.

14        Thank you, Your Honor.

15        THE COURT:  Okay.

16        MR. SHARGEL:  May I?  I have one more thing to bring

17   up, if I may.

18        I want to report to the Court on the conditions at

19   the MDC.  I want to first put on the record that finally

20   yesterday Mr. Fanchini was moved to the west building.

21        THE COURT:  Very good.

22        MR. SHARGEL:  And despite the government's

23   suggesting in a letter that they sent to you that counsel

24   should be with Mr. Fanchini as he listens to conversations and

25   reads papers, reads documents, I think we have worked this out

GR      OCR      CM      CRR      CSR

34

1  with Mr. Johnson at the MDC who said he would supply the

2  laptop to Mr. Fanchini in the visiting room and counsel need

3  not be present for that.  Because it is common, as we have

4  learned from earlier correspondence, it is common for inmates

5  to be working in the visiting room with desktop computers.  He

6  is just going to add another computer that will be exclusively

7  for use by Mr. Fanchini.

8          The one --

9          THE COURT:  This came from the Bureau of Prisons or

10  from --

11          MR. SHARGEL:  That came from Mr. Johnson.

12  Mr. Mazurek spoke to him after we received the letter from the

13  government.

14          THE COURT:  All right.  Thank you.

15          MR. SHARGEL:  One more thing.  Finally, finally, I

16  promise.

17          The question of the ten boxes in and the ten boxes

18  out which was discussed yesterday, only this morning a

19  counselor named Mr. Cotton, C O T T O N, as I understand it,

20  told Mr. Fanchini that that was physically impossible.  I am

21  putting it on the record but I will attempt to work this out

22  with Mr. Johnson who said it was possible.

23          THE COURT:  Yes.  The Bureau of Prisons is not the

24  easiest group to deal with.  Come on back if you can't solve

25  it among yourselves.

GR      OCR      CM      CRR      CSR

1          All right.

2          MR. TISCIONE:  Thank you.

3          THE COURT:  We will take a brief recess and then I

4  will call the next case.

5          (Matter concludes.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

GR      OCR      CM      CRR      CSR