

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RLC:SLT                                    *271 Cadman Plaza East*
F.#2007R00229                              *Brooklyn, New York  11201*


April 2, 2009


<u>By Hand</u>

The Honorable Joan Azrack
United States Magistrate Judge
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. Nikolai and Arthur Dozortsev
           <u>Criminal Docket Nos. 07-736(CPS); 08-044(CPS)</u>

Dear Judge Azrack:

      The government respectfully submits this letter in
support of its request pursuant to 18 U.S.C. § 3143(a)(1) to
remand the defendants Nikolai Dozortsev and Arthur Dozortsev
pending sentencing.  As the defendants cannot demonstrated by
clear and convincing evidence that they pose no risk of flight or
danger to the community if released, the Court should deny the
defendants' application for post-conviction release on bail.

      A.   <u>The Legal Standard</u>

      Post-verdict bail is governed by 18 U.S.C.
§ 3143(a)(1), which states in pertinent part:

> [T]he judicial officer shall order that a person who has
> been found guilty of an offense and who is awaiting
> imposition or execution of sentence, other than a person
> for whom the applicable guideline ... does not recommend
> a term of imprisonment, be detained, unless the judicial
> officer finds by clear and convincing evidence that the
> person is not likely to flee or pose a danger to the
> safety of any other person or the community if released
> under section 3142(b) or (c). If the judicial officer
> makes such a finding, such judicial officer shall order

2

the release of the person in accordance with section 3242(b) or (c).[1]

As explained by the Second Circuit, "18 U.S.C. § 3143(a)(1) creates a presumption in favor of detention; it places the burden on the defendant to defeat that presumption; and it requires the defendant to carry that burden by clear and convincing evidence, not by a mere preponderance. Only if a defendant clears these high procedural hurdles is he entitled to release pending sentencing." United States v. Abuhamra, 389 F.3d 309, 320 (2d Cir. 2004). This is a marked difference from the standard applicable to pre-trial determinations of bail. See S. Rep. No. 225, 98th Cong., 1st Sess. 26 (1983), reprinted in 1984 U.S.Code Cong. & Admin. News 3182, 3209 ("Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal.").

Indeed, present federal law strongly disfavors release on bail after a defendant has been convicted. Compare Bail Reform Act of 1984, Pub.L. No. 98-473, 203a, 98 Stat.1976, 1981-82 (codified as amended at 18 U.S.C. § 3143(a) (2000)) (presuming court should order detention of defendant pending sentencing unless the court "finds by clear and convincing evidence" that the defendant will be neither a flight risk nor a danger to any person or to the community) with Bail Reform Act of 1966, Pub.L. No. 89-465, 3(a), 80 Stat. 214, 215-16 (repealed 1984) (presuming court should grant bail unless it reasonably believed that defendant would flee or pose a danger to society). "To secure release on bail after a guilty verdict, a defendant must rebut this presumption with clear and convincing evidence that he is not a risk of flight or a danger to any person or the community." Abuhamra, 389 F.3d at 319 (citing Fed.R.Crim.P. 46(c); S. Rep. 225, supra, at 27, reprinted in 1984 U.S.Code Cong. & Admin. News at 3210 ("The Committee intends that in overcoming the presumption in favor of detention [in § 3143(a)], the burden of proof rests with the defendant.").

In imposing such a high burden for post-conviction release on bail, the Bail Reform Act recognizes the government's strong interest in detaining defendants who have been found guilty beyond a reasonable doubt of serious crimes: "such detention promotes public safety by removing a presumptively dangerous person from the community; it also encourages general

---

[1] Section 3142(b) provides for pre-trial release on a personal recognizance or unsecured appearance bond. Section 3142(c) provides for pre-trial release on certain conditions.

3

respect for the law by signaling that a guilty person will not be able to avoid or delay imposition and service of the sentence prescribed by law." <u>Abuhamra</u>, 389 F.3d at 320.  The former concern was a critical motivating factor in the enactment of the Bail Reform Act of 1984.  <u>See</u> S. Rep. 225, <u>supra,</u> at 26, <u>reprinted in</u> 1984 U.S.Code Cong. & Admin. News at 3185 ("Many of the changes in the bail reform act ... reflect the committee's determination that federal bail law must address the alarming problem of crimes committed by persons on release and must give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released.").

"The interest in ensuring that guilty persons receive and serve their sentences was also a significant impetus to the enactment of § 3143." <u>Abuhamra</u>, 389 F.3d at 320 (citing S. Rep. 225, <u>supra,</u> at 26, <u>reprinted in</u> 1984 U.S.Code Cong. & Admin. News at 3209 (noting that "release of a criminal defendant into the community after conviction may undermine the deterrent effect of the criminal law")); <u>see also</u> <u>United States v. Shoffner</u>, 791 F.2d 586, 589 (7th Cir. 1986) ("Congress' desire to reverse what it perceived as a presumption in favor of bail even after conviction under prior bail law demonstrates its recognition that harm results not only when someone is imprisoned erroneously, but also when execution of sentence is delayed because of arguments that in the end prove to be without merit.") (internal citation omitted).

Accordingly, under 18 U.S.C. § 3143(a)(1), the Court must detain the defendant Stephen Barker pending sentencing unless the defendant proves by clear and convincing evidence that he poses no risk of flight or danger to any person or the community.  Since the defendant has not met this heavy burden, the statute requires that the defendant be remanded until sentencing.

B.   <u>Risk of Flight</u>

The government continues to have serious concerns regarding the defendants' risk of flight, which are only exacerbated by their conviction, vast amounts of hidden wealth and the fact that they now face new criminal penalties for committing crimes while on pretrial release.

4

## 1.   Defendants' International Travel and Foreign Ties

The defendants have significant foreign ties that greatly increase their risk of flight.  Both defendants have strong family and business ties to Russia, the Ukraine and several Eastern European countries.  Indeed, the defendants and their family own properties in multiple foreign countries including Russia, the Ukraine and Bulgaria.  Moreover, the defendants have made frequent international travel to these locations, many of which do not have extradition treaties with the United States.

## 2.   Defendants' Hidden Assets and Financial Resources

As discussed in more detail in the complaint in support of their original arrests, and the complaint in support of bond revocation, the defendants have access to substantial resources and hidden wealth that they have consistently attempted to shield through a dizzying panoply of shell companies, off-shore bank accounts and straw purchasers.

The exact amount of financial wealth available to the defendants is still unknown at this time.  As set forth in the complaint in support of bond revocation, however, the government has established that Nikolai Dozortsev is the principal owner of commercial property located in Newark, New Jersey - which has been conservatively valued at more than $2 million.   Property records and documents recovered from a search of Nikolai Dozortsev's house during the investigation also revealed that he owns large tracts of real estate in Bulgaria; has an extensive ownership stake in multi-million dollar properties in Odessa, Ukraine and Moscow, Russia; and owns a condo in Brooklyn, New York that is conservatively valued at approximately $900,000.  In addition, while Nikolai Dozortsev claims income of only $150 per week on several affidavits filed with Medicaid, subpoenaed records for several bank accounts controlled by Nikolai Dozortsev showed millions of dollars being deposited, wired and/or withdrawn by Nikolai Dozortsev during the time period he was collecting fraudulent Medicaid benefits.

Similarly, property records established that Arthur Dozortsev has an ownership interest in commercial property located in Newark, New Jersey - which has been conservatively valued at more than $2 million.   Property records and documents recovered from a search of Arthur Dozortsev's home during the investigation also revealed that he owns a newly-constructed condo in Las Vegas, Nevada; a second condo in South Beach, Florida; a third condo at 20 Pine Street, New York, NY; and lives

5

in a condo at 444 West 19th Street, New York, New York that was recently appraised at approximately $1.5 million.  Moreover, although Arthur Dozortsev filed affidavits with Medicaid claiming no income or assets, subpoenaed records for several bank accounts controlled by Arthur Dozortsev showed millions of dollars being deposited, wired and/or withdrawn by Arthur Dozortsev during the time period he was collecting fraudulent Medicaid benefits.

3.   Defendants Face a Significant Term of Incarceration

One of the factors traditionally considered in bail determinations at any stage of a criminal proceeding is the seriousness of the offense and the potential sentence the defendant faces if convicted.  It is axiomatic that a defendant's risk of flight increases exponentially after he has been convicted of a serious federal crime and is faced with the prospect of a lengthy term of incarceration.  Defendants Nikolai and Arthur Dozortsev were convicted of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956, and health care fraud in violation of 18 U.S.C. § 1347.  Both defendants now face additional charges for committing Medicaid fraud while on pretrial release and their sentences may be increased for their violations of pretrial release.  Both defendants face a maximum sentence of 20 years for the offenses of conviction, giving the defendant a powerful incentive to flee if released.

In light of the impending prospect of facing a significant amount of time in prison, the defendants Nikolai Dozortsev and Arthur Dozortsev pose a significant risk of flight if released pending sentencing.

C.   Danger to the Community

In addition to their risk of flight, the defendants have failed to establish by clear and convincing evidence that they will not be a danger to the community if released on bail pending sentencing.

First, the defendants' dangerousness is presumed by their convictions for two serious felony offenses.  As the Supreme Court noted in Jones v. United States, 463 U.S. 354, 364 (1983), "[t]he fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness."  "This distinction is evidenced in the different presumptions about dangerousness that apply to pre-trial and post-verdict bail determination."  Abuhamra, 389 F.3d at 320.

6

Second, the defendants have continued to commit new crimes during the entire time they were on pretrial release. Indeed, the defendants combined to commit more than 180 separate acts of health care fraud during a time that they were under the strictest terms of Court supervision.

A defendant poses a danger to the community not only when he commits acts of violence, but when he is likely to commit non-violent crimes that harm the community as well. See S. Rep. No. 225 98th Cong., 1st Sess. 6-7, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3188-89. ("language referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence").

Courts have explicitly held that home detention and electronic monitoring are insufficient to protect the community against dangerous individuals such as the defendants. See, e.g., United States v. Marra, 165 F. Supp.2d 478, 486 (W.D.N.Y. 2001) (the Court "finds that electronic monitoring will not reasonably assure defendant's presence as required. At most, electronic monitoring would only reduce defendant's head start should she decide to flee."); United States v. Agnello, 101 F. Supp.2d 108, 116 (E.D.N.Y. 2000) ("the protection of the community provided by the proposed home detention remains inferior to that provided by confinement in a detention facility"). That is nowhere more evident than the instant case, as defendant Nikolai Dozortsev was already on home detention with electronic monitoring when he committed 156 acts of Medicaid fraud.

In sum, no condition or combination of conditions will be sufficient to protect the community from further abuses by these defendants.

## CONCLUSION

The defendants have been convicted of serious offenses and face significant terms of incarceration up to 20 years. Coupled with their strong foreign ties and hidden wealth, the defendants simply cannot demonstrate by clear and convincing evidence that they pose no risk of flight. In addition, given the defendants' rampant violations of the terms of their pretrial release by engaging in more than 180 acts of fraud, the defendants cannot prove by clear and convincing evidence that their release would pose no risk of danger to the community. For

7

all of these reasons, the government opposes release of the defendants pending sentencing.

Respectfully submitted,

BENTON J. CAMPBELL
UNITED STATES ATTORNEY

By:

Steven L. Tiscione
Assistant U.S. Attorney
(718) 254-6317


cc:  Clerk of the Court
     Barry Zone, Esq.
     Edward Sapone, Esq.