UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA,              :        07cr736 (S-3)-02
                                       :
              Plaintiff,               :
                                       :
    -v-                                :
                                       :
NIKOLAI DOZORTSEV,                     :
                                       :
              Defendant.               :
---------------------------------------------------------------X


# DEFENDANT NIKOLAI DOZORTSEV'S
# SENTENCING MEMORANDUM


Robert S. Wolf
Gersten Savage LLP
Attorneys for Nikolai Dozortsev
600 Lexington Avenue
New York, New York 10022

The defendant Nikolai Dozortsev ("Dozortsev") by and through his undersigned counsel submits this sentence memorandum and states as follows:

## PRELIMINARY STATEMENT

On November 12, 2008, Mr. Dozortsev plead guilty pursuant to a written plea agreement (annexed hereto as Exhibit A) to conspiring to launder money in violation of 18 U.S.C. §1956 (h) and health care fraud in violation of 18 U.S.C. §1347. In anticipation of his sentence presently scheduled for December 9, 2010 we submit this memorandum so as to:

(1) Present critical facts to the Court which are relevant to sentencing but are not fully addressed in the Presentence Investigation Report ("PSR");

(2) Provide the Court with a better understanding of the man who stands before it for sentencing; and,

(3) To furnish information to support why the Court, relying on the advisory United States Sentencing Guidelines ("U.S.S.G.") and considering the factors enumerated in 18 U.S.C.A. §3553(a) should impose a sentence on Mr. Dozortsev of no more than 51 months.

We respectfully submit that a sentence of no more than 51 months is sufficient but not greater than necessary to satisfy the purpose of 18 U.S.C. §3553 (a). Having been incarcerated for over 20 months, Mr. Dozortsev has been deterred from committing any future crimes. In addition, as of the date of his sentencing, relative to his plea to Medicaid Fraud, Mr. Dozortsev will have paid $50,000 in restitution, and has committed to pay an additional $150,000 during his period of supervised release. In addition, in accordance with his plea agreement, and relative to his plea to money laundering, he has paid $175,000.00 in forfeiture proceeds. This payment was made to secure the release of property the government had filed liens upon.

Mr. Dozortsev's re-payment and agreement to repay additional proceeds derived from his conduct, clearly demonstrates that he has admitted his wrongdoing and more importantly, that he has accepted responsibility for his criminal acts.

2

Finally, Mr. Dozortsev's history and characteristics demonstrate that he has and will continue to be, after his release from prison, strongly committed to the well-being of his family, his community and his business.

## I. The Instant Offense

Mr. Dozortsev has pled guilty to conspiring to launder money in violation of 18 USC §1956 (h) and health care fraud in violation of 18 U.S.C. §1347. With respect to his violation of 18 USC §1956 (h), Mr. Dozortsev pled guilty to money laundering from approximately 2005 - 2007 solely in connection with the sale of illegal, un-taxed cigarettes, and not narcotics. Although a portion of the illegal proceeds made it into Mr. Dozortsev's domestic bank accounts, the sale of the untaxed cigarettes occurred primarily overseas. With respect to the health care fraud, Mr. Dozortsev has accepted responsibility for having applied for and received Medicaid benefits, notwithstanding the fact that he made more money than the maximum amount that would qualify him for such benefits. In that regard and as explained more fully below, by the time he is sentenced Mr. Dozortsev will have paid $50,000 towards his $200,000 restitution obligation. He will pay an additional $150,000 during his period of supervised release.

## II. Payment of Restitution

Pursuant to his plea agreement, and relative to his plea of guilty to health care fraud, Mr. Dozortsev is required to pay $150,000.00; $50,000.00 prior to sentencing and the other $100,000.00 during his supervised release period. As agreed, Mr. Dozortsev will pay the $50,000.00 prior to sentencing.

In addition, Mr. Dozortsev continued to utilize Medicare, when he arguably had already been found ineligible, (although he would argue that subsequent to his plea, his family's financial condition may have qualified them for "family and child health plus," a Medicare

3

programs). However, to properly resolve this dispute, he has agreed to pay in full, the additional $50,000.00 at issue, thus avoiding the need to litigate this issue. Mr. Dozortsev further and voluntarily agreed with the government that he would secure this additional $50,000 with his own liberty interests – by agreeing that during his supervised release period, ***should it be determined that he has not paid any of the additional $50,000.00***, then, it may be considered a violation of the conditions of supervised release, and the Court will determine the penalty for said violation, which may include imprisonment. In a most compelling way, Mr. Dozortsev's agreement in this regard, demonstrates both his recognition and acceptance of responsibility.

### III. <u>Background and Characteristics</u>

#### A. Family

Nikolai Dozortsev was born on December 29, 1965 in Odessa, Ukraine to the marital union of Semyon Rybalov and Larisa Dozortsev. When Mr. Dozortsev was five years old his parents ended their relationship due to Semyon's abuse of alcohol. A little more than a year later, Mrs. Dozortsev married Eugene Dozortsev. Eugene raised Mr. Dozortsev, always treating him as if he were his own biological child. Mr. Dozortsev has two siblings - - Oleg Rybalov, his paternal half brother, is 36 years old, resides in Brooklyn, and is employed as a speech therapist. Arthur Dozortsev, Mr. Dozorstev's maternal half brother, is 38 years old and resides in Manhattan. Arthur was a co-defendant in this action and recently was sentenced by Your Honor to a term of probation.

On June 28, 1986, Mr. Dozortsev married Sophia Persits. The couple gave birth to one child, Julian Dozortsev. After six years of marriage, Mr. Dozortsev and Ms. Persists divorced. Julian remained living with his mother and Mr. Dozortsev continued to provide him with financial support. Julian is aware of his father's present circumstances and remains supportive.

4

In a letter to the Court, annexed hereto as exhibit "B," Julian expresses his "love and concern" for his father, he states:

> "[My father] is a really great man and has always put his whole family before himself. From these unfortunate events I have learned that life can change in an instant and we have to cherish everyday we have together. I also believe that every person deserves a second chance to learn from their mistakes and to become that much of a better person."

On October 18, 1995, Mr. Dozortsev married again to Irena Dozortsev. The couple gave birth to two children, Gabriella Dozortsev, age 15, and Michael Dozortsev, age 12. Having been estranged from his biological father at an early age due to his father's alcoholism and his parent's subsequent divorce, and having had experienced a divorce of his own, with his second marriage, Mr. Dozortsev was committed to maintaining a strong familial unit and has in fact done so. Today, Mr. Dozortsev shares a close personal relationship with his wife Irena and his two children who rely greatly on him for emotional support. In a letter written to the Court, "C" Gabriella explains the struggles her family now faces in Mr. Dozortsev's absence:

> "All I want is for my family to go back to the way we were. Looking for a fun way to spend quality time together on Saturdays and Sundays. Having dinner on Thanksgiving and Passover. Not having to see my brother be upset because my dad won't be there for his Bar Mitzvah. Seeing my mother struggling with money and bills. Seeing my sick great grandmother calling everyone she sees Nikolai because she doesn't understand where he's gone."

Similarly, Mr. Dozortsev's son Michael writes about how much he misses and needs his father:

> "When my father was around it would be a lot more fun and I would always have someone to talk to in my time of need. Even when everyone in the house was sleeping at night it felt safe because we had a man in the house to protect us. I really miss my dad. I wish he was here with me, my mom and my sister."

Exhibit "D."

Since Mr. Dozortsev's arrest and subsequent incarceration, his family has suffered deep emotional and financial setbacks. In a letter written to Your Honor, Exhibit "E," Mr. Dozortsev's father Eugene writes that as a result of his sons sentence his "wife is having health issues and [his] grandchildren are having nightmares from missing [their] father." Mr. Dozortsev's mother Larisa also writes to Your Honor about the toll Mr. Dozortsev's present situation has taken on his family. She writes:

> "[Mr. Dozortsev] has always took a great care of his family and [it is] very
> hard for us to survive without him. His children are suffering without him
> a lot. I have a mother who is very, very sick. For her Nicky is her heart, her
> arms, her legs, her soul, her air. We told her he is away [on] business overseas,
> and every day she asks when he is coming back and I know that is the only
> thing, awaiting for him to come back, that is keeping her alive."

Exhibit "F."

As stated by Larisa, Mr. Dozortsev's grandmother, Olga, who is 85 years old and is very sick, relies greatly on Mr. Dozortsev for emotional and physical support. As each day passes without Mr. Dozortsev's presence in her life, her condition worsens.

Finally, in her letter to the Court, Exhibit "G," Mr. Dozortsev's wife Irena writes that since Mr. Dozortsev's incarceration her "children suffer a great deal." Gabriela has performed poorly in school and Michael "has become very sensitive to small stressful situations and now sees a psychiatrist." She also notes that she is working full time while caring for her two children and is over 24 months behind on her mortgage. Finally, as only a wife could feel when her husband's liberty is uncertain, Irena implores the Court for leniency, she writes:

> "Your Honor, I do not feel that my husband is a threat to society.
> Having him away from his family, his friends and the community
> has been a detriment to us all. I hope that the Court will look at all
> of the good things that Nicky has done in his life. He has had a
> positive impact on many and most importantly, on our children.
> Please Your Honor, I ask that you strongly consider giving Nicky

>the most lenient sentence possible. My life has not been and will
>never be the same without him by my side."

### B. Community

In 1974, when Mr. Dozortsev was nine years old, he and his family left the Ukraine and began a new life in New York. As explained by Avrohom Winner, a Rabbi from Mr. Dozortsev's Brighton Beach community, Ukrainian families came to the United States to seek refuge from the persecution and discrimination they faced in the Soviet Union which "prevent[ed] them from being able to practice their Jewish heritage." See Exhibit "H." Upon their arrival they were "excited and anticipated the ability to openly be able to practice, even in a small way, their Jewish heritage." Id. Like the Dozortsev family, many of the Ukrainian Jews who immigrated to the United States settled in Brighton Beach, Brooklyn. The Dozortsev family has played an integral role in the development of that community and today it stands as a social, cultural and economic hub for Russian-Americans. Indeed, the overwhelming number of letters written to the Court on Mr. Dozortsev's behalf demonstrates the positive impact Mr. Dozortsev and his family have had on the Brighton Beach community.

Long time family friend and New York Assemblymen, Alec Brook-Kransy, shares a close relationship with Mr. Dozortsev's father and has known the family for over 12 years. Mr. Brook-Kransy writes that in addition to running a successful business – which also contributes to the community, "Eugene and both of his sons are men of integrity and strong moral fiber. They are dedicated to the enrichment and well being of their community, as is illustrated through their involvement in numerous community groups and charitable events". *See* Exhibit "I."

Similarly, Senator Carl Kruger of the State of New York in Kings County, who represents the largest Russian-speaking constituency in the state, attests that Mr. Dozortsev's step-father, Eugene, is "a local businessman with strong ties to the neighborhood and a history of

7

service to his community". *See* Exhibit "J." Senator Kruger also notes of the continuing support the Dozortsev family provides in assisting Russian-speaking immigrants in their often difficult adjustment and transition to a new life in the United States. *Id.*

Natasha Aksenova, owner of NY Paralegal Group, Inc., a company which provides assistance to immigrants in a variety of immigration matters, has known Mr. Dozortsev and his family for over 30 years. She writes of the time when her family first immigrated to the United States:

> "My family immigrated from Odessa, Ukraine in 1989. We are friends with Nicky and his family since 1972. They are the people who did everything possible in order for my family to come to safety in the USA. But we are not the only ones - - Nicky and his family offered help to everyone. This is the kind of family he grew up in. He was taught right ideals and traditions. It is my great pleasure to see today how Nicky, father of three, teaches his kids the same values I observed in his family."

*See* Exhibit "K."

Likewise, Aleksandr Aksenov's family also emigrated from Odessa, Ukraine in 1989 to the United States. Having been born in the same town as Mr. Dozortsev, their families have remained close for over 40 years. Mr. Aksenov recalls his first days in the United States as a teenager and writes:

> "I was 14 years old when I came to the US. Nicky has been my friend through these years. He is the one I turned for help in difficult situations in high school and college. On a number of occasions Nicky would come to help me and my friends. Him and his wife, Irina, set example for me as a parent. When my son was born I could call them in any time, day or night, to get advice."

Today, Ms. Askenov is a graphic designer and owner of Universal Creative Design Company. See Exhibit "L."

Additionally, Gregory Davidzon, President of Davidzon Media, Inc., the most popular radio station in the Russian American radio market, has known the Dozortsev family for many years. Mr. Davidzon writes:

> "For many years I have been close to with the Dozortsev family... They are respected by many people and very known in [the] Russian American community as high moral and hardworking people. My company organized a lot of events: culture, history, sport and etc. Regardless of his busy schedule Nick Dozortsev always found time to attend our events and cooperate with Community problems. Nick Dozortsev is an honest friend, very warm and supportive person. He would be the first one to help during hard time."

*See* Exhibit "M."

Mr. Dozortsev and his family have also engaged in giving to many charitable organizations in need of aid. Brooklyn Borough President, Marty Markowitz, has been a close personal friend to Mr. Dozortsev's step-father Eugene for a number of years. Mr. Markowitz writes that Eugene had always found the time to "get involved in his local community, adopting many charitable causes addressing the needs of seniors, Holocaust survivors, local synagogues and community organization." *See* Exhibit "N."

In addition, to his father's philanthropic donations, Mr. Dozortsev has also personally gone beyond his own community to contribute to an Orphanage in his hometown, Odessa, Ukraine. George E. Anastassov, a maxillofacial surgeon whose practice is located in New York City, has known Mr. Dozortsev for over 10 years. He writes:

> "Nicky has always been a great father, loving husband and thoughtful friend. Part of my professional life involves overseas travels for lectures and surgical care of disadvantaged children affected by craniofacial malformations. One of the places that I was invited to operate was Odessa in the Ukraine where the Dozortsev family originates. The city of Odessa has 10

9

> orphanages. Many of the children are affected with craniofacial malformations the most common being cleft lip and/or palate. The living conditions of these children are deplorable and there are a handful of organizations supporting them. I was invited there by an American organization called "Universal Aid for Children." I shared my experiences with Nicky who was touched and since has had contributed to the orphanages in Odessa among other charities. This shows to me that he conscientious, giving individual deserving respect and admiration."

*See* Exhibit "O."

Mr. Dozortsev's community contributions have not gone unnoticed by other prominent leaders of his community. Pat Singer, Executive Director and Founder of the Brighton Neighborhood Association describes Mr. Dozortsev to be "an upstanding citizen who has been a wonderful asset to [the] community of Brighton Beach". *See* Exhibit "P."

In addition to the letters quoted from above, other family and friends of Mr. Dozortsev have requested that we forward to the Court letters in which they describe Mr. Dozortsev as they have known him. Attached herewith as Exhibit "Q" are copies of these letters. While the Court should not overlook the crimes Mr. Dozortsev has committed, we most respectfully request that it strongly consider Mr. Dozortsev's overall character and the many significant contributions he has made to his community when conferring a sentence upon him.

### C. Employment

Prior to his arrest in this instant offense, Mr. Dozortsev was employed as a partner of Dozortsev and Sons Trading. Mr. Dozortsev's brother, Arthur Dozortsev and his step-father, Eugene Dozortsev, are his partners in the business. The Company is involved primarily with the import and export of food and beverages between The U.S. and other countries. Through Mr. Dozortsev's tireless efforts, the Company has grown tremendously over the past 15 years. Mr.

Michael Khanaan, President of Russian Business Communications recalls of Mr. Dozortsev's steadfast commitment to the success of this family business. He writes:

> "Nicky Dozortsev was one of the first in the Russian community to start working the "American way." Together with his father and brother, he created a business which became legendary in the community. In less than 3 years "Dozortsev and Sons" were able to build a successful brand in the most competitive field - - liquor business. I use to work with the Dozortsevs for 2 years marketing their product worldwide. In this capacity, I was in close contact with Nicky Dozortsev, often traveling with him around the States and abroad. Countless times I witnessed his outstanding hard work and talents invested in the business. Moreover, his growth as a businessman was developing together with his dedication to philanthropy and charity. As a generous sponsor or silent donor, Nicky Dozortsev supported a lot of good causes and helped many people in need in this community and beyond it."

*See* Exhibit "R."

Since his arrest in this instant offense, Mr. Dozortsev has been absent from the day to day operations of Dozortsov and Sons Trading. In his letter to the Court, Eugene Dozortsev notes that business has "suffered without [Nicky Dozortsev's] leadership and guidance." (Ex. E). Upon his release from prison Mr. Dozortsev will resume his duties as an active partner of Dozortsev and Sons Trading and will continue to maintain his family's legacy.

### IV. Mr. Dozortsev's Need For Substance Abuse Treatment

Unfortunately, the financial and personal pressures of life have driven Mr. Dozortsev to alcohol. Prior to his incarceration, Mr. Dozortsev drank nearly one liter of Vodka a few times per week. Mr. Dozortsev recognizes now his addiction to alcohol and how it has caused him to make poor decisions which in part have led him to where he sits today - - in prison. He also realizes the severe pain and suffering this addiction has caused his family. Accordingly, we implore the Court to fashion a sentence for Mr. Dozortsev that recognizes his need for alcohol treatment so that he never again turns to alcohol, and so that he can otherwise live a law-abiding life.

## V.  Relevant Sentences of Mr. Dozortsev's Co-Defendants

When sentencing Mr. Dozortsev we respectfully request that the Court take into consideration the sentences it has already imposed on his co-defendants, Ricardo Marian Fanchini and Arthur Dozortsev. First with respect to Mr. Fanchini, the Court imposed on him a sentence of 120 months despite the fact that an analysis of the sentencing Guidelines would have exposed him to life in prison. Mr. Fanchini, unlike Mr. Dozortsev, pled guilty to money laundering in connection with the sale of narcotics and was the leader of an alleged criminal organization. Mr. Dozortsev has pled guilty only to money laundering in connection with the sale of illegal, un-taxed cigarettes and health care fraud. With respect to Arthur Dozortsev, a more minor participant, despite the fact that his stipulated Guidelines range pursuant to his plea agreement was 18 to 24 months, and that Probation placed him at an offense level of 32 with a Guidelines range of 121-151 months, Your Honor imposed upon him a sentence of probation. Accordingly, we respectfully submit that Mr. Dozortsev's sentence should be no greater than 51 months as opposed to the suggested 144 month sentence recommended by Probation.

## VI.  Plea Agreement and Appropriate Stipulated Advisory Guideline Calculation

Mr. Dozortsev's stipulated and agreed upon advisory guidelines calculation and sentencing range pursuant to his plea agreement with the government (Ex. A). For reasons identified in objections to the PSR (previously filed and annexed as Exhibit "S") consistent with the plea agreement, the defense strongly objects to the Department of Probation's guideline's calculation which provides for an imprisonment range of 360 months to life as plainly incorrect.

In addition, there should be no criminal history points attributed for Mr. Dozortsev's 22 year old larceny conviction. As evidenced by the official record of the relevant conviction, annexed to Exhibit S, Mr. Dozortsev's was sentenced in 1987 and released in February, 1988.

Accordingly, the instant offenses which were committed in the time period of approximately 2005 to 2007, more than 15 years after his release from jail in the referenced larceny case.

We respectfully request that the Court sustain these objections and that the PSR be amended accordingly.

### VII.   The Appropriate Sentence

In a series of decisions the Supreme Court has held that the sentencing court is obligated to impose a reasonable sentence "sufficient but not greater than necessary" to achieve the objectives list in 18 U.S.C. 3553 (a). In determining a sentence the Court must consider the factors enumerated in 3553 (a) including the applicable sentencing guideline range, giving each factor the weight the Court feels is appropriate. United States v. Booker and United States v. Fanfan, 125 S. Ct. 738 (2005); Rita v. United States, 127 S. Ct. 2456 (2007); Gall v. United States, 128 S. Ct. 586 (2007); and, Kimbrough v. United States, 128 S. Ct. 558 (2007).

Section 3553(a) of 18 U.S.C., requires courts to impose on a defendant *"a sentence sufficient, but not greater than necessary,"* to comply with certain purposes outlined in subsection 2 thereof. These criteria require a sentence sufficient:

1.   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

2.   To afford adequate deterrence to criminal conduct;

3.   To protect the public from further crimes of the defendant; and

4.   To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) also provides inter alia, that the courts must now be mindful of the following:

13

    a.    the nature and circumstances of the offense and the history and characteristics of the defendant;

    b.    the kinds of sentences available;

    c.    the kinds of sentence and the sentencing range applicable for the category of offense and defendants set forth in the guidelines;

    d.    the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

We believe that in light of these factors, and the efforts already made by Mr. Dozortsev (and those anticipated) a sentence of no more than 51 months would be sufficient and reasonable.

Having already spent over 20 months in prison, Mr. Dozortsev has realized the mistakes he has made and has been deterred from engaging in any future criminal activity. Further, Mr. Dozortsev has accepted responsibility for the crimes he has committed and has demonstrated this acceptance by his guilty plea and through his restitution payments. In a letter written to Your Honor, Exhibit "T," Mr. Dozortsev writes of his acceptance of responsibility and remorse, he states:

> "Your Honor, I have been engaged in great reflection of my actions which have lead me down this devastating road. I offer no excuses and I take full responsibility for my actions. I acted recklessly and selfishly. What troubles me the most is that my own failures now have extreme consequences not only for myself, but for my mother, father, my wife and my children, who are all innocent casualties of my selfish behavior. I also take responsibility for involving my brother in my crime. I am grateful that this Court saw fit to impose a lenient sentence upon him. I have always provided my family with emotional and financial support. Knowing that my wife Irena cannot make our mortgage payments and that my son Michael is experiencing certain psychological issues as a result of my actions, while I sit here powerless in prison has been the most difficult experience I have faced in my entire life. Trust that I will never again engage in criminal conduct as I never again want to sit in prison while my loved ones suffer. Another innocent victim of my selfish behavior is my Grandmother, Olga Aristov.

She is 85 years of age, and in very poor health. Homebound, she awaits the day I will return to her life. I miss her dearly and try to speak with her as much as she is able. I only pray she lives to see me again, which her doctors explain is almost impossible."

In his current circumstances, Mr. Dozortsev does not pose a threat to society. Indeed, the many letters submitted to the Court by members of Mr. Dozortsev's community depict a man committed to helping his neighbor regardless of his own circumstances. Accordingly, a sentence of no more than 51 months is clearly warranted in this instance as it is a sentence "sufficient but not greater than necessary" to comply with all the §3553 factors above.

## CONCLUSION

Mr. Dozortsev has made a serious error for which he has accepted responsibility and shown remorse. In light of the foregoing, we respectfully urge this Court to confer upon him a sentence of no more than 51 months.

Dated: December 6, 2010

GERSTEN SAVAGE LLP

BY: _____
Robert S. Wolf (RW9711)
600 Lexington Avenue
New York, New York 10022
Telephone: (212) 752-9700